UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS H. COYLE, and
LINDA SUE COYLE,

                              Plaintiffs,

            v.

GLS LEASCO, INC.,
C.C. EASTERN, INC.,
CENTRAL TRANSPORT INTERNATIONAL, INC.,
 Holding Company of GLS Leasco, Inc., and
 C.C. Eastern, Inc., and
CENTRA, INC., as Holding Company of Central
 Transport International, Inc.,

                              Defendants.
_____

**REPORT
and
RECOMMENDATION**
------------------------------
**DECISION
and
ORDER**

**05-CV-754A(F)**

APPEARANCES:           JOHN LLOYD EAGAN, JR., ESQ.
                       Attorney for Plaintiffs
                       905 Convention Tower
                       43 Court Street
                       Buffalo, New York 14202

                       ALTREUTER BERLIN
                       Attorneys for Defendants
                       WILLIAM C. ALTREUTER, of Counsel
                       Market Arcade Complex
                       617 Main Street
                       Buffalo, New York 14203

## JURISDICTION

        This action was referred to the undersigned by Honorable Richard J. Arcara on

October 27, 2005, for pretrial matters including report and recommendation on

dispositive motions.  The matter is presently before the court on Plaintiffs' motions for

summary judgment (Doc. No. 31), filed February 14, 2008, and to preclude expert

witness evidence (Doc. No. 44), filed April 28, 2008, and on Defendants' motions for

summary judgment (Doc. No. 38), filed April 4, 2008, for sanctions (Doc. No. 43), filed

April 22, 2008, and to strike Plaintiffs' affidavit (Doc. No. 53), filed June 6, 2008.[1]


## BACKGROUND and FACTS[2]

On November 4, 1986, GLS Leasco, Inc. ("Leasco") purchased real property

located at 850 Aero Drive, in Cheektowaga, New York ("the Premises"), from Terminal

Rentals, Inc. (Halls Motor Freight) ("Terminal Rentals").  On December 30, 1986,

Leasco was merged into Centra, Inc. ("Centra"), and Centra made a capital contribution

of all of Leasco's real estate assets, including the Premises, to Central Transport

International, Inc. ("Central Transport").  On January 1, 1990, Central Transport made a

capital contribution of all its real estate assets, including the Premises, to Crown

Enterprises, Inc., a Tennessee corporation.  On August 31, 1990, Crown Enterprises,

Inc., a Tennessee corporation, merged into Crown Enterprises, Inc., a Michigan

corporation ("Crown").

On September 25, 1992, Crown and Con-Way Central Express, a part of Con-

Way Transportation Services, Inc. ("Con-Way"), a foreign corporation,[3] entered into a

lease agreement ("the Lease")[4] whereby Crown, as the landlord of the Premises,

---

[1] Although the summary judgment motions are dispositive, and the motions for sanctions and to strike are nondispositive, all five pending motions are addressed in this combined Report and Recommendation and Decision and Order in the interest of judicial economy.

[2] The Facts are taken from the pleadings and motion papers filed in this action.

[3] Crown does not specify Con-Way's state of incorporation, but Con-Way admits this allegation. Con-Way Answer (*Coyle II*, Doc. No. 20, ¶ 4).

[4] A copy of the Lease is attached as Exhibit H to the Second Altreuter Affidavit (attached to *Coyle I*, Doc. No. 38).

agreed to lease the Premises to Con-Way for Con-Way's use in operating a commercial trucking business.  Pursuant to the Lease, Con-Way, as tenant, agreed to "indemnify Landlord [Crown] and save it harmless from and against any and all claims, actions, suits, damages, liabilities, loss, orders, decrees, or judgments and expenses of any kind or nature whatsoever, including without limitation, attorneys' fees, costs and expenses . . . ."  Lease § 9.

The Lease, which was amended on May 1, 1994, March 18, 1996, September 15, 1997, and August 30, 1999, remained in effect on February 7, 2003, when, Coyle, in connection with his employment by Con-Way, drove a tow-motor used to unload freight from trucks across a cracking and sinking portion of a concrete slab floor of a truck terminal located at the Premises.  The poor condition of the concrete slab floor allegedly jostled the moving tow motor, causing Plaintiff to fall from the tow motor and sustain injuries.

On September 9, 2005, Plaintiffs Thomas H. Coyle ("Coyle"), and his wife, Linda Sue Coyle ("Mrs. Coyle") (together, "Plaintiffs"), commenced a personal injury action in New York Supreme Court, Erie County ("*Coyle I*"), seeking monetary damages for injuries sustained as a result of a February 7, 2003 incident ("the incident"), occurring at 850 Aero Drive, Cheektowaga, New York ("the Premises").  Named as Defendants in *Coyle I* are Leasco as the alleged owner of the Premises, C.C. Eastern, Inc. ("C.C. Eastern"), the alleged operator of a trucking terminal at the Premises, Central Transport, the holding company of Leasco and C.C. Eastern, and Centra, the holding company of Central Transport (together, the "*Coyle I* Defendants").  According to Plaintiffs, the *Coyle I* Defendants are all Michigan corporations.  *Coyle I* Complaint ¶ 3.

On October 20, 2005, the *Coyle I* Defendants removed the action to this court (*Coyle I*, Doc. No. 1) ("Removal Notice"), asserting diversity of citizenship under 28 U.S.C. § 1332 as the basis for subject matter jurisdiction,[5] and filed an answer to the Complaint.

On December 8, 2005, Plaintiffs commenced in New York Supreme Court, Erie County a second personal injury action ("*Coyle II*") seeking monetary damages for injuries sustained as a result of the February 7, 2003 incident.  Named as the sole Defendant in *Coyle II* is Crown Enterprises, Inc. ("Crown"), an entity allegedly hired by Leasco to maintain and control the Premises.  On December 22, 2005, Crown removed the action to this court asserting diversity of citizenship under 28 U.S.C. § 1332 as the basis for subject matter jurisdiction.  Crown's answer was filed on December 23, 2005.

On February 6, 2006, Crown moved in *Coyle II* to consolidate *Coyle I* and *Coyle II* in light of the fact that both actions seek recovery of monetary damages for personal injuries Plaintiffs sustained as a result of the February 7, 2003 incident.  On April 7, 2006, Crown filed in *Coyle II* a third-party complaint ("the Third Party Complaint") against Con-Way Central Express, as part of Con-Way Transportation Services, Inc.[6]  On April 11, 2006, Plaintiffs and Crown consented in *Coyle II* to proceed before the undersigned.  Con-Way's answer to the Third Party Complaint was filed on May 8,

---

[5] Defendants' removal of this action was never challenged and the record reveals no reason to doubt that complete diversity exists.

[6] Although the record does not specify Con-Way's place of incorporation, even if Con-Way is a New York corporation and, thus, non-diverse, Con-Way's status as a Third-Party Defendant ensures that Con-Way does not destroy diversity jurisdiction.  *See Fidelity and Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir. 1983) ("[I]t is clear that if a case is properly within the diversity jurisdiction and the defendant files a third party complaint against a resident of the plaintiff's state the court does not lose jurisdiction over the plaintiff's claim.") (citing *Fawvor v. Texaco, Inc.*, 546 F.2d 636, 638 (5th Cir. 1977), and 6 Wright & Miller, Federal Practice and Procedure § 1444).

2006.

On September 28, 2006, the undersigned denied the motion to consolidate *Coyle I* and *Coyle II*.  Accordingly, *Coyle I* is before the undersigned on referral from Chief District Judge Arcara, whereas *Coyle II* is before the undersigned on consent.  Despite the undersigned's denial of Crown's motion to consolidate *Coyle I* with *Coyle II*, the parties filed a series of duplicate motions, with identical supporting papers, in both *Coyle I* and *Coyle II*.

On February 14, 2008, Plaintiffs filed a motion for summary judgment (*Coyle I*, Doc. No. 31) ("Plaintiffs' Summary Judgment Motion"), supported by the attached Affirmation of John Lloyd Egan, Esq. ("First Egan Affirmation"), and Exhibits A through H ("Plaintiffs' Exh(s). __").  Plaintiffs filed the same motion with identical supporting papers in *Coyle II* on February 19, 2008.  (*Coyle II*, Doc. No. 45).  In opposition to Plaintiffs' Summary Judgment Motion, on April 4, 2008, the *Coyle I* Defendants filed the Affidavit of William C. Altreuter, Esq. (*Coyle* I, Doc. No. 37) ("First Altreuter Affidavit"), and an identical affidavit in *Coyle II*.  (*Coyle II*, Doc. No. 50).

On April 4, 2008, the *Coyle I* Defendants filed a motion for summary judgment (*Coyle* I, Doc. No. 38) ("*Coyle I* Defendants' Summary Judgment Motion"), supported by the attached Affidavit of William C. Altreuter, Esq. ("Second Altreuter Affidavit"), exhibits, the Affidavit of Larry Jacobs ("Jacobs Affidavit"),[7] the Affidavit of Tommaso Briatico ("Briatico Affidavit"), a Statement of Uncontested Facts ("*Coyle I* Defendants' Uncontested Facts Statement"), and a Memorandum of Law ("*Coyle I* Defendants'

---

[7] On April 7, 2008, *Coyle I* Defendants re-filed the Jacobs Affidavit twice (Docs. Nos. 39 and 40). No reason for these additional filings is provided other than an "E-Filing Notation" dated April 7, 2008 explaining that the Jacobs Affidavit was unsigned.

Memorandum"), and Crown filed the same motion with identical supporting papers in *Coyle II*.  (*Coyle II*, Doc. No. 51).

On April 17, 2008, Plaintiffs filed in support of Plaintiffs' Summary Judgment Motion and in response to *Coyle I* Defendants' Summary Judgment Motion the Affidavit of John Lloyd Egan, Esq. (*Coyle I*, Doc. No. 42) ("First Egan Affidavit"), with attached exhibits.  Plaintiffs filed the same motion with identical supporting papers in *Coyle II* on April 17, 2008.  (*Coyle II*, Doc. No. 54).

On April 22, 2008, the *Coyle I* Defendants filed a motion to preclude Plaintiffs from offering expert evidence (*Coyle I*, Doc. No. 43) ("*Coyle I* Defendants' Sanctions Motion"), supported by the attached Affidavit of William C. Altreuter, Esq. ("Third Altreuter Affidavit"), and exhibits.  Crown filed the same motion with identical supporting papers in *Coyle II* on April 22, 2008.  (*Coyle II*, Doc. No. 56).

On April 25, 2008, Con-Way joined in the consent to proceed before the undersigned filed by Plaintiffs and the *Coyle II* Defendants on April 11, 2006 in *Coyle II*. (*Coyle II*, Doc. No. 57).

On April 28, 2008, Plaintiffs filed a motion to preclude the *Coyle I* Defendants from offering expert evidence (*Coyle I*, Doc. No. 44) ("Plaintiffs' Sanctions Motion"), supported by the attached Affirmation of John Lloyd Egan, Esq. ("Second Egan Affirmation"), and also filed the same motion with identical supporting papers in *Coyle II*. (*Coyle II*, Doc. No. 58).

On May 5, 2008, the *Coyle I* Defendants filed in opposition to Plaintiffs' Sanctions Motion the Affidavit of William C. Altreuter, Esq. (*Coyle I*, Doc. No. 47) ("Fourth Altreuter Affidavit"), with attached exhibits.  Crown filed the same papers in *Coyle II* also on May

6

5, 2008.  (*Coyle II*, Doc. No. 61).

On May 6, 2008, Plaintiffs filed in support of Plaintiffs' Summary Judgment Motion the Affidavit of Thomas Coyle (*Coyle I*, Doc. No. 48) ("Coyle Affidavit"), with an attached exhibit, and filed the same papers in *Coyle II*.  (*Coyle II*, Doc. No. 62).  On May 13, 2008, Plaintiffs filed a document (*Coyle I*, Doc. No. 49) containing the Affidavit of John Lloyd Egan, Esq,  in further support of Plaintiffs' Sanctions Motion ("Second Egan Affidavit"), the Affidavit of John Lloyd Egan, Esq. in opposition to *Coyle I* Defendants' Sanctions Motion ("Third Egan Affidavit"), with attached; Plaintiffs filed the same papers in *Coyle II*.  (*Coyle II*, Doc. No. 64).

On May 20, 2008, the *Coyle I* Defendants filed in opposition to Plaintiffs' Sanctions Motion the Reply Affidavit of William C. Altreuter, Esq. (*Coyle I*, Doc. No. 50) ("Fifth Altreuter Affidavit"), and Crown filed an identical affidavit in *Coyle II*.  (*Coyle II*, Doc. No. 66).

On May 30, 2008, the *Coyle I* Defendants filed in further support of *Coyle I* Defendants' Sanctions Motion the Reply Affidavit of William C. Altreuter, Esq. (*Coyle I*, Doc. No. 51) ("Sixth Altreuter Affidavit"), with attached exhibits, and Crown filed identical papers in *Coyle II*.  (*Coyle II*, Doc. No. 67).

On June 5, 2008, Plaintiffs filed the Reply Affidavit of John Lloyd Egan, Esq. (*Coyle I*, Doc. No. 52) ("Fourth Egan Affidavit"), with attached exhibits, and also filed an identical affidavit in *Coyle II*.  (*Coyle II*, Doc. No. 68).  On June 6, 2008, the *Coyle I* Defendants filed a motion to strike the Fourth Egan Affidavit (*Coyle I*, Doc. No. 53) ("*Coyle I* Defendants' Motion to Strike"), supported by the attached Affidavit of William C. Altreuter, Esq. ("Seventh Altreuter Affidavit"), and Crown filed an identical motion with

the same supporting papers in *Coyle II*.  (*Coyle II*, Doc. No. 69).  On June 23, 2008, Plaintiffs filed in opposition to *Coyle I* Defendants' Motion to Strike the Reply Affidavit of John Lloyd Egan (*Coyle I*, Doc. No. 55) ("Fifth Egan Affidavit"), and also filed the same affidavit in *Coyle II*.  (*Coyle II*, Doc. No. 71).

Oral argument was deemed unnecessary.

Based on the following, Plaintiffs' Summary Judgment Motion should be DENIED; the *Coyle I* Defendants' Summary Judgment Motion should be GRANTED; the *Coyle I* Defendants' Sanctions Motion is DISMISSED as moot; Plaintiffs' Sanctions Motion is DISMISSED as moot; the *Coyle I* Defendants' Motion to Strike is DISMISSED as moot, and the Clerk of the Court should be directed to close the file.

## DISCUSSION

Both Plaintiffs and *Coyle I* Defendants have filed motions seeking summary judgment of all claims in their favor.  In particular, Plaintiffs argue in support of summary judgment against *Coyle I* Defendants that *Coyle I* Defendants have admitted having both prior knowledge of the concrete slab floor's deteriorating condition that caused the incident, and control of the Premises and, as such, cannot escape liability for Plaintiffs' injuries.  First Egan Affirmation ¶ 2.[8]  *Coyle I* Defendants seek summary judgment dismissing the action against all *Coyle I* Defendants on the basis that Crown, the sole Defendant in *Coyle II*, was, at all time relevant to the instant case, both owner and

---

[8] Whether, as Plaintiffs assert, *Coyle II* Defendant Crown was aware of and failed to take steps to correct the deteriorating condition of the Premises that allegedly caused the February 7, 2003 incident in which Coyle was injured is irrelevant to resolving Plaintiffs' Summary Judgment Motion and, as such, is not addressed in this Report and Recommendation.

Landlord of the Premises and, as such, is the only proper defendant to the pending

claims.  Second Altreuter Affidavit ¶¶ 5-6.[9]

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as

to the absence of any genuine issue as to all material facts, the nonmoving party must,

to defeat summary judgment, come forward with evidence that would be sufficient to

support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*,

51 F.3d 14, 18 (2d Cir. 1995).

Further, Local Rule 56 of Federal Civil Procedure for the Western District of New

York Rule require that a motion for summary judgment be supported by "a separate,

short, and concise statement of the material facts as to which the moving party

contends there is no genuine issue to be tried."  Local Rule 56.1(a).  The party opposing

---

[9] The *Coyle I* Defendants' further assertions that *Coyle II* Defendant Crown was an out-of-possession landlord who is not liable for Plaintiffs' injuries, Second Altreuter Affidavit ¶¶ 7-24, and the Lease requires Third-Party Defendant Con-Way to indemnify Crown, *id.* ¶¶ 25-28, are irrelevant to the motions pending in *Coyle I* and, as such, are not addressed here.

summary judgment is required to provide "a separate short, and concise statement of the material facts as to which it is contended that there exists a genuine issue of fact." Local Rule 56.1(b).  Moreover, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  Local Rule 56.1(c).

The Second Circuit, however, has held that a moving party's "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).[10] Rather, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Id*. at 74.  Nevertheless, where the factual assertions contained in Local Rule 56.1 are both supported by evidence in the record and uncontested, it is within the court's discretion to deem such facts admitted.  *See Zahorik v. Cornell University*, 729 F.2d 85, 91 (2d Cir. 1984) (observing that where plaintiffs failed to file responding statement of facts allegedly in dispute in accordance with local rule, and failed to present any statistical evidence substantiating plaintiffs' theory of disparate impact, district judge had discretion to deem defendants' entire statement of material facts admitted).

It is significant that in the instant action, the *Coyle I* Defendants submitted in support of summary judgment the *Coyle I* Defendants' Uncontested Facts Statement,

---

[10] At issue in *Holtz*, was Local Rule 56.1 (S.D.N.Y.), which is essentially the same as Local Rule 56.1 (W.D.N.Y.).

but Plaintiffs did not file a statement pursuant to Local Rule 56.1, nor did Plaintiffs

submit a separate statement opposing the *Coyle I* Defendants' Uncontested Facts

Statement.  In particular, the *Coyle I* Defendants assert that there is no genuine issue

requiring trial as to the fact that "Crown Enterprises, Inc. was the owner and landlord of

850 Aero Drive, Cheektowaga, New York."  *Coyle I* Defendants' Uncontested Facts

Statement ¶ 1.  *Coyle I* Defendants further assert that Con-Way occupied the Premises

pursuant to the Lease, as amended, and which defined the relationship between Crown

and Con-Way, including the duties and responsibilities of the parties, *id.* ¶¶ 3, 5, and

that Con-Way was the tenant of the Premises as of February 7, 2003, when Coyle "was

injured in the course of his employment with Con-Way . . . ."  *Id.* ¶¶ 2, 4.

The undisputed facts asserted by the *Coyle I* Defendants are supported by the

statements of Crown's real estate portfolio manager Larry Jacobs ("Jacobs"), contained

in the Jacobs Affidavit, and relevant portions of the Lease and its amendments.  Jacobs,

based on his review of the contents of files maintained by Crown regarding the

Premises, recounts a series of business transactions by which Crown became owner of

the Premises.  In particular, Leasco initially purchased the Premises from Terminal

Rentals on November 4, 1986.  Jacobs Affidavit ¶ 2.  On December 30, 1986, Leasco

was merged into Centra, and Centra made a capital contribution of all of Leasco's real

estate assets to Central Transport which, on January 1, 1990, made a capital

contribution of all its real estate assets to Crown Enterprises, Inc., a Tennessee

Corporation which, on August 31, 1990, merged into Crown Enterprises, Inc., a

Michigan corporation ("Crown").  *Id.*  On September 25, 1992, Crown and Con-Way

entered into the Lease whereby Crown, as the landlord of the Premises, agreed to lease

the Premises to Con-Way for Con-Way's use in operating a commercial trucking

business. *Id.* Jacobs's statements are supported by the copy of the Lease and its

amendments, and are uncontested by Plaintiffs.

Pursuant to an Amendment to Lease Agreement dated May 1, 1994 ("May 1,

1994 Lease Amendment"),[11] the term of the Lease was extended to September 30,

1996. The May 1, 1994 Lease Amendment further provides that

It is understood that the Landlord's name has changed as a result of a transfer of ownership from Central Transport, Inc. to Crown Enterprises, Inc.

May 1, 1994 Lease Amendment § 5.

The May 1, 1994 Lease Amendment was executed by Crown's Vice President - Real

Estate Gerald A. Rauch, and Con-Way's Vice President - Operations Richard Palazzo.

May 1, 1994 Lease Amendment. Each subsequent amendment to the Lease is also

executed by officers of Crown and Con-Way, with no further mention of Central

Transport. *See* March 18, 1996 Lease Amendment (extending Lease's term through

September 30, 1997); September 15, 1997 Lease Amendment (extending Lease's term

through September 30, 1999); August 30, 1999 Lease Amendment (extending Lease's

term through September 30, 2001); June 22, 2001 Lease Amendment (extending

Lease's term through September 30, 2003); and June 26, 2003 Lease Amendment

(extending Lease's term through September 30, 2005).[12] The Lease and its

Amendments thus establish that as of the date of the incident, Crown was the owner

---

[11] A copy of the May 1, 1994 Lease Amendment is submitted with the copy of the Lease attached as Exhibit H to the Second Altreuter Affidavit.

[12] Copies of all Lease Amendments are attached to the copy of the Lease submitted as Exhibit H to the Second Altreuter Affidavit.

and Landlord of the Premises.

Plaintiffs' only response in opposition to the *Coyle I* Defendants' Uncontested Facts Statements is a bare assertion that the most recent recorded real estate transaction pertaining to the Premises is a Deed recorded in Liber 9719 at page 188 on June 1, 1987 in the Erie County Clerk's Office which shows Leasco's November 4, 1986 purchase of the Premises from Terminal Rental.  Fourth Egan Affidavit at 2 and Exhibit A.  Upon Leasco's December 30, 1986 merger into Centra, however, under both Michigan and New York law, all of Leasco's real estate holdings became assets of Centra as Leasco's successor, without the need to record any deed pertaining to such transfer.  Mich. Comp. Laws § 450.1724(1)(b) (2002) (providing that when a merger takes effect, "[t]he title to all real estate and other property and rights owned by each corporation party to the merger are vested in the surviving corporation without reversion or impairment."); N.Y. Bus. Corp. Law § 906(a) and (b)(2) (McKinney's 2003) (providing that upon the filing of the certificate of merger by the department of state, the merger is effected and "[a]ll the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent entities, shall vest in such surviving or consolidated corporation without further act or deed.").  Insofar as Plaintiffs allege all *Coyle I* Defendants are Michigan corporations, *Coyle I* Complaint ¶ 3, Plaintiffs fail to assert any other state's law relevant to the acquisition by merger of corporate real property assets would require any different result.[13]  As such, upon

---

[13] The parties do not dispute that in this diversity action the court is required to apply applicable state substantive law.  *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 549 F.3d 137, 141-42 (2d Cir. 2008) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.") (internal quotation omitted).

merging with Centra, Leasco's real estate assets became assets of Centra, and Centra was then able to dispose of the Premises through a capital contribution to Central Transport, which in turn disposed of the Premises through a capital contribution to Crown.

Absent any evidence from Plaintiffs challenging the accuracy or veracity of the *Coyle I* Defendants' Uncontested Facts Statement, and in light of the objective evidence supporting such statement, there is no question that none of the *Coyle I* Defendants are proper parties to this action as they had no interest in the Premises at the time of Coyle's injuries upon which to predicate a negligence claim based on landlord or owner liability. *See Kilmer v. White*, 171 N.E. 908, 909 (N.Y. 1930) (holding former landlord, after selling and delivering possession of apartment building to purchaser, was not responsible for injuries to tenant who subsequently fell from apartment building's piazza when defective railing gave way because "[o]ne's liability in negligence for the condition of land ceases when the premises pass out of one's control before injury results."). Furthermore, insofar as Plaintiffs' Sanctions Motion has already been DENIED, and *Coyle I* Defendants' Sanctions Motion and Motion to Strike have already been GRANTED in the Decision and Order rendered in *Coyle II*, contemporaneously with the instant combined Report and Recommendation and Decision and Order, such determination, by virtue of the doctrine of *res judicata*, and to promote judicial economy, further litigation on the same issues in this action is barred and such motions are DISMISSED as moot.

Accordingly, summary judgment should be GRANTED in favor of all *Coyle I* Defendants and DENIED as to Plaintiffs. *Coyle I* Defendants' Sanctions Motion,

Plaintiffs' Sanctions Motion and *Coyle I* Defendants' Motion to Strike are DISMISSED as moot.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' Summary Judgment Motion (Doc. No. 31) should be DENIED; *Coyle I* Defendants' Summary Judgment Motion (Doc. No. 38) should be GRANTED; *Coyle I* Defendants' Sanctions Motion (Doc. No. 43) is DISMISSED as moot; Plaintiffs' Sanctions Motion (Doc. No. 44) is DISMISSED as moot; *Coyle I* Defendants' Motion to Strike (Doc. No. 53) is DISMISSED as moot, and the Clerk of the Court should be directed to close the file.

SO ORDERED, as to *Coyle I* Defendants'
Sanctions Motion, Plaintiffs' Sanctions
Motion, and *Coyle I* Defendants' Motion
to Strike,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 19, 2009
            Buffalo, New York

Respectfully submitted, as to Plaintiffs'
Summary Judgment Motion, and *Coyle I*
Defendants' Summary Judgment Motion,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 19, 2009
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 19, 2009
            Buffalo, New York